[Cite as *Benzle v. Benzle*, 2026-Ohio-2838.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Emily Benzle, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 25AP-995 |
| v. | : | (C.P.C. No. 21DR-4282) |
| Kyle Benzle, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on July 23, 2026

**On brief:** *Emily Benzle*, pro se. **Argued:** *Emily Benzle*.

**On brief:** *Kyle Benzle*, pro se. **Argued:** *Kyle Benzle*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

LELAND, J.

{¶ 1} Defendant-appellant, Kyle Benzle, pro se, challenges the December 5, 2025 judgment and decree of divorce ("Divorce Decree") of the Franklin County Court of Common Pleas, Division of Domestic Relations. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} The parties were married on October 6, 2012 in Franklin County, Ohio. During the course of their marriage, they had two children. On December 9, 2021, plaintiff-appellee, Emily Benzle, pro se, filed a complaint for divorce. There were multiple hearings, and the trial lasted multiple days.

{¶ 3} The parties litigated a division of assets and debts, most of which are not germane to this appeal. For example, the parties had multiple cars, credit card debt,

financial accounts, and retirement accounts.  Since these assets and debts were held in each party's individual name, the trial court simply distributed them equitably to the account holder.

{¶ 4}   For purposes of this appeal, the single biggest issue at trial was whether proceeds from the sale of a house held by a family trust were traceable as separate, non-marital property.  According to the Divorce Decree, the Benzle Family Residential Trust ("the trust") was created by appellant's parents in 2012.  Its beneficiaries were appellant and his two siblings.  Appellant testified in a video deposition that his parents funded the trust with their family residence in Dublin, Ohio ("the trust property"), and that there were no amendments.  At trial, appellant testified that at some point he and his siblings wished to purchase their own homes.  They "dissolved the trust," sold the trust property, and divided the proceeds equally. (Divorce Decree at 7.)  Appellant received approximately $60,000-$70,000.  Appellant testified at trial that he invested part of that money, eventually earning over $1 million from the investments.

{¶ 5}   Regarding the question of whether the investment proceeds remained non-marital, separate property, appellant admitted that appellee had access to the investment accounts.  According to the Divorce Decree, appellant testified " 'I told her she has full access to this money, we can do whatever you want with it.  Here's how to access it, here's how it works. You have full control over it.' " (Divorce Decree at 7.)  The trial court noted that appellant failed to disclose being a beneficiary of any other trust at the time of the divorce, let alone a trust that had title to the investment proceeds.  Further, the trust document allowed the trustees to sell the trust property and reinvest the proceeds "directly into the purchase of another property," but that is not what happened. (Divorce Decree at 8.)  Ultimately, the trial court observed "[t]here was no evidence presented that traced any funds." (Divorce Decree at 8-9.)

{¶ 6}   On December 5, 2025, the trial court issued the Divorce Decree as its final decision and judgment entry.  The trial court concluded that appellant was unable to trace the proceeds from the sale of the trust property as non-marital, separate property, and, thus, the proceeds became marital property.  Further, the trial court found that an IRS debt for taxes associated with the sale of those investments was also marital property.

{¶ 7} The trial court also addressed appellee's motions for contempt findings and attorney fees against appellant. At the time of trial, there were four pending motions for contempt. Appellant did not deny the facts alleged in any of them. The first, third, and fourth all concerned failure to pay child support. The third motion for contempt concerned an alleged violation of a magistrate's order not to disparage each other. Evidence produced at trial showed appellant making multiple crude remarks to appellee. The trial court asked appellant if he denied making the remarks, and appellant stated " 'I'm not saying I deny it. I'm saying I don't recall saying that and this is a very heated divorce case.' " (Divorce Decree at 28.) The trial court ultimately found appellant in contempt as to all four motions.

{¶ 8} Regarding attorney fees, appellee had moved the court to order appellant to pay appellee's attorney fees associated with preparing and filing the motions for contempt. Since the trial court had granted those motions, it ordered appellant to pay appellee's attorney fees of $7,594.98 incurred in preparing those motions. In addition, in her written closing argument, appellee pointed to appellant's behavior over the course of the divorce proceedings and argued that appellant had caused undue delay and in general had driven up the cost of litigation. Appellee requested the court order appellant to pay for appellee's attorney fees accrued from December 9, 2021 through May 31, 2024 in the amount of $86,248.63. The trial court found that appellant had substantially delayed and obstructed court proceedings. Specifically, the court found that appellant had missed a scheduled court date without notice, had failed to produce necessary financial documentation which required the case to be recalled, and that he had provided evasive testimony causing the trial to drag on unnecessarily. Considering the equities, the trial court awarded one-third of the requested attorney fees to appellee for a total of $28,750.00.

{¶ 9} The total amount of attorney fees, when adding the fees associated with the contempt findings and the request from appellee's written closing argument, was $36,344.98. There was no indication in the Divorce Decree that the trial court considered appellant's ability to pay those fees.

{¶ 10} Regarding custody, the parties signed a two-page memorandum of agreement on December 18, 2023. Each of the parties attorneys also signed the agreement, as did the guardian ad litem, and the trial court judge. All signatures appear on the first page. Twenty-three months later, after trial had concluded but before the final Divorce

Decree was issued, appellant filed a "Motion to Modify Parental Rights." In it, appellant argued he did not witness or read the second page; therefore, the court should strike that page. Ten days after filing the motion, the trial court issued the Divorce Decree and denied any outstanding motions.

{¶ 11} This appeal followed.

## II. Assignments of Error

{¶ 12} Appellant appeals and assigns the following three assignments of error for our review:

> [I.] The trial court imposed a $36,344.98 monetary award, including Appellee's attorney fees, without making the findings required by R.C. 3105.73(A) concerning Appellant's ability to pay.
>
> [II.] The trial court committed reversible error by misclassifying premarital trust assets as marital property and by imputing ownership and financial capacity to Appellant based on assets held by legally distinct entities and trusts, without the findings required by law.
>
> [III.] The trial court erred by enforcing material custody and parenting restrictions as agreed settlement terms without any showing that Appellant reviewed, approved, or assented to those terms, without conducting an evidentiary hearing, and without making the independent best-interest findings required by R.C. 3109.04.

## III. Discussion

{¶ 13} As an initial matter, the court notes that appellant failed to comply with App.R. 9(B), 16(A)(3), and 16(A)(7). Pursuant to App.R. 12(A)(1)(b), this court must decide the matter based on the assignments of error presented pursuant to App.R. 16, the record on appeal under App.R. 9, and oral argument, if any, under App.R. 21. App.R. 9(A)(1) states that the record shall contain, among other things, "the transcript of proceedings" from the trial court. The record on appeal in this case contains no transcripts.

{¶ 14} An appellant bears the burden of providing a transcript of the proceedings below. "It is the appellant's responsibility to include all the evidence in the appellate record so that the claimed error is demonstrated to the reviewing court." *Columbus v. Hodge*, 37 Ohio App.3d 68, 69 (10th Dist. 1987), citing *Bates & Springer, Inc. v. Stallworth*, 56 Ohio

App.2d 223 (8th Dist. 1978). Under App.R. 9, it was appellant's obligation to ensure that a record of the proceedings, including transcripts, be provided to this court. If no recording was made, or a recording is no longer available for transcription, App.R. 9(C) and (D) provide alternatives for creating a substitute record of the proceedings. In any event, appellant provided an incomplete record by failing to include transcripts, and he did not avail himself of App.R. 9(C) or (D).

{¶ 15} Based on appellant's failure to comply with App.R. 9 and 16, this court could disregard and summarily overrule his assignments of error. *See* App.R. 12(A)(2). Moreover, without having a transcript of the proceedings, this court has no alternative but to presume the regularity of the proceedings and the validity of the judgment in the trial court. *See Shalash v. Shalash*, 2023-Ohio-3030, ¶ 31 (10th Dist.) and *Katju v. Bavadekar*, 2016-Ohio-7970, ¶ 42 (10th Dist.). "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).

{¶ 16} Regardless, insofar as this court is able to do so, it will proceed to address the assignments of error based on the record provided, including statements of fact included in the Divorce Decree and the transcript of a video deposition of appellant.

### A. Ability to Pay

{¶ 17} In his first assignment of error, appellant argues the trial court abused its discretion by awarding appellee attorney fees without considering his ability to pay. In a divorce action, a court may award reasonable attorney fees if the court finds the award to be equitable. R.C. 3105.73. When determining whether an award of attorney fees is equitable, a trial court may rely upon its own experience and knowledge when determining the reasonableness of the fees. *Katju* at ¶ 40, citing *Ramsey v. Ramsey*, 2014-Ohio-1921, ¶ 51 (10th Dist.). A trial court's decision to award attorney fees under R.C. 3105.73 lies within the discretion of the trial court, and it will not be reversed absent an abuse of discretion. *See Thaher v. Hamed*, 2010-Ohio-5257, ¶ 14 (10th Dist.), citing *Huffer v. Huffer*, 2010-Ohio-1223, ¶ 19 (10th Dist.). An abuse of discretion is more than mere error. It signifies that the trial court's decision was unreasonable, unconscionable, or arbitrary.

*Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An award of attorney fees may be predicated on one party causing the other party to incur unnecessary, substantial fees or when one party is responsible for much of the litigation. *Grosz v. Grosz*, 2005-Ohio-985, ¶ 27 (10th Dist.), citing *Trott v. Trott*, 2002-Ohio-1077 (10th Dist.).

{¶ 18} Appellant argues R.C. 3105.73 requires trial courts to consider parties' ability to pay prior to awarding attorney fees; failure to do so, appellant argues, violates the statute and constitutes an abuse of discretion. Even though appellant claimed that he made over $1 million investing in cryptocurrency and rare earth metals, he now argues that he is unable to pay $36,344.98. Appellant is correct that a trial court's decision to award attorney fees in a divorce action is governed by R.C. 3105.73(A). That section states that a court may award reasonable attorney fees and litigation expenses if the court finds the award equitable. When determining whether an award would be equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A).

{¶ 19} Again, it is worth noting that appellant failed to provide transcripts for the divorce action. Perhaps if this court had been able to review those transcripts, there might have been something that would support appellant's position. Regardless, multiple appellate courts around the state, including this one, already have concluded that a trial court is not required to consider a party's ability to pay when awarding attorney fees. That is why this court, in *Padgett v. Padgett*, 2008-Ohio-6815, ¶ 13 (10th Dist.), concluded "R.C. 3105.73(B) allows, but does not require" a trial court to make a finding whether a party has the ability to pay attorney fees. *See also Bain v. Levinstein*, 2010-Ohio-5596 (8th Dist.) and *Harkey v. Harkey*, 2008-Ohio-1027, ¶ 130 (11th Dist.) (under R.C. 3105.73, a court is not required to consider a party's ability to pay, only whether it is equitable).

{¶ 20} Aside from the plain meaning of the statute, appellant's argument suffers from another problem. The Divorce Decree makes it clear that the trial court had reviewed the evidence produced at trial and concluded appellant was either hiding assets or was intentionally underemployed. The trial court noted, "[t]he Court finds that [appellant's] testimony regarding his income was elusive and inconsistent." (Divorce Decree at 23-24.) The court went on to explicitly find that appellant was intentionally underemployed:

"[appellant] could make far more than he suggests. . . . The Court finds that [appellee] is working at or around her earning ability. [Appellant] is not. [He] has worked for the US census, a college biology instructor and a farmer. [His] earning ability is far above what he is currently allegedly earning." (Divorce Decree at 23-24.)

{¶ 21} Accordingly, appellant's first assignment of error is overruled.

### B. Trust Assets

{¶ 22} In his second assignment of error, appellant argues the trial court erred by misclassifying proceeds from the sale of the trust property as marital property. "In divorce proceedings, the trial court must 'determine what constitutes marital property and what constitutes separate property.' " *Wolf-Sabatino v. Sabatino*, 2011-Ohio-6819, ¶ 9 (10th Dist.), quoting R.C. 3105.171(B). "When parties contest whether an asset is marital or separate property, the asset is presumed marital property unless proven otherwise." *Id*. at ¶ 11, citing *Miller v. Miller*, 2009-Ohio-3330, ¶ 20 (7th Dist.).

{¶ 23} R.C. 3105.171 divides property into two categories: marital and separate. The statute defines "marital property" as (1) all real and personal property currently owned by "either or both of the spouses," (2) all interest either spouse has in any real or personal property, and (3) "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(i) through (iii). Separate property is excluded from the definition of marital property. R.C. 3105.171(A)(3)(b).

{¶ 24} "Separate property," as is relevant to this appeal, is defined as any interest in real or personal property that was acquired by one spouse prior to the date of the marriage and passive income and appreciation acquired from separate property by one spouse during the marriage. R.C. 3105.171(A)(6)(a)(ii) and (iii). Separate property may be commingled with marital property and maintain its identity as separate property, but only if the separate property is traceable. R.C. 3105.171(A)(6)(b).

{¶ 25} Appellant and his two siblings were beneficiaries of the trust. As the trial court noted in its Divorce Decree, the only property held by the trust was the residence located at Hayden Run Road; there were no amendments to the trust and no property was ever added to the trust. According to the Divorce Decree, the trust property was sold during the parties' marriage, and the proceeds went toward living expenses for appellant's family,

and the rest was invested in cryptocurrency and rare earth metals.  Appellant argued at trial that the proceeds of the sale were separate property.  As this court previously acknowledged in *Wolf-Sabatino*, separate property does not automatically become marital property when the two are commingled, if the separate property is traceable. *Wolf-Sabatino*, 2011-Ohio-6819, at ¶ 11 (10th Dist.).  Tracing is the act of determining whether separate property has lost its separate character after being commingled with marital property. *Id.*, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734 (10th Dist. 1994).  The party asserting property was separate property, and is thus not subject to division as marital property, bears the burden of proving that such property was separate.

{¶ 26}  According to the Divorce Decree, appellant admitted that appellee had access to the investment accounts, "giving her the practical ability to treat the alleged 'trust assets' as marital assets."  (Divorce Decree at 7.)  As the trial court noted in its Divorce Decree, "when asked if [appellee] had access to these funds, [appellant] stated 'I told her she has full access to this money, we can do whatever you want with it.  Here's how to access it, here's how it works. You have full control over it.' "  (Divorce Decree at 7.)

{¶ 27}  The trial court noted that it had difficulty tracing the trust property.  For example, appellant stated that the proceeds from the sale of the trust property were reinvested in Benzle LLC, a company he formed with his brother, but Benzle LLC was not incorporated until four to five years after the trust residence was sold.  Further, appellant testified that as soon as the trust property was sold, the "money became mar[it]al property." (Divorce Decree at 9.)

{¶ 28}  A reviewing court's job is not to reweigh the evidence presented and conduct a de novo review.  Rather, its job is to determine whether competent, credible evidence exists to support the trial court's findings. *Wehrle v. Wehrle*, 2013-Ohio-81, ¶ 41 (10th Dist.).  In this case, based on appellant's admissions and his inability to trace the proceeds from cryptocurrency and rare earth metal purchases back to the trust property, we find no abuse of discretion in the trial court's determination that the proceeds from the trust property became marital property.

{¶ 29}  Therefore, appellant's second assignment of error is overruled.

### C. Custody Memorandum of Agreement

{¶ 30} In his third assignment of error, appellant asks this court to vacate custody provisions contained in a memorandum of agreement dated December 18, 2023 that was later incorporated into the Divorce Decree. Appellant correctly points out that the two-page document is signed on the first page, but not the second page. Twenty-three months after the memorandum of agreement was signed, but before the Divorce Decree was issued, appellant filed a motion seeking relief from it. Ten days after filing this motion, the trial court issued its Divorce Decree and denied the motion.

{¶ 31} Appellant cites no authority for the proposition that the memorandum of agreement is invalid if it is not signed on the second page. Neither his motion nor his merit brief cite any case law. This court recognized the validity of a similar memorandum of agreement in *Agarwal v. Bansal*, 2001 Ohio App. LEXIS 1505 (10th Dist. Mar. 30, 2001). There, the appellant argued that there existed a legitimate dispute regarding the terms of custody. In upholding the terms of the memorandum of agreement, this court noted the parties' signatures appeared on the document, they initialed it, and the appellant's signature specifically appeared at the bottom of the page with the relevant terms. *Agarwal* at *8.

{¶ 32} This last point is relevant to this appeal, because the very provisions appellant wants vacated appear on the page he signed. In his appeal, appellant specifically requests this court "vacate the custody and parenting-time provisions derived from the unsigned [memorandum of agreement] page." (Appellant's Brief at 7.) The only provisions in the memorandum of agreement concerning custody and parenting time are found on page 1. That page is signed by each of the parties, their attorneys, the guardian ad litem, and the trial judge. The document also states "1 of 2" in the bottom right of the first page, and "2 of 2" in the bottom right of the second page. There are nine clauses total in the memorandum of agreement with the first four—and arguably the most important—appearing on the first page. On the first page of the memorandum of agreement, the clauses are as follows: appellee is awarded sole custody of the children (Clause 1); appellant is awarded parenting time (Clause 2); and exchanges are to be curbside and extracurricular activities are to proceed regardless of whose parenting time it is (Clauses 3 and 4).

{¶ 33} Page 2 of the memorandum of agreement contains five clauses that touch on an app the parties are supposed to use (Clause 6); provisions relating to the guardian ad litem and parenting coordinator (Clauses 5, 7, and 9); and there is a requirement not to disparage each other or the guardian ad litem (Clause 8). None of these clauses appear to be related to the relief appellant requested in his motion or on appeal.

{¶ 34} This court does not find appellant's third assignment of error to persuasive. Therefore, appellant's third assignment of error is overruled.

## IV. Conclusion

{¶ 35} Having found that appellant violated multiple rules of appellate procedure, and having overruled each of his three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

BOGGS, P.J., and DINGUS, J., concur.

———————————